UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-386 (ESH) |
| | : | |
| v. | : | |
| | : | |
| ANTOINE JONES, | : | |
|     also known as "Toine," | : | |
| | : | |
| ADRIAN JACKSON, | : | |
| | : | |
| MICHAEL HUGGINS, | : | |
| | : | |
| KEVIN HOLLAND, | : | |
| | : | |
| LAWRENCE MAYNARD, | : | |
| | : | |
| KIRK CARTER, | : | |
| | : | |
| ALBERTO ROLLANDO CARRILLO-MONTELONGO, | : | |
| | : | |
| ROEL BERMEA, JR., and | : | |
| | : | |
| RICARDO SANCHEZ-GONZALEZ, | : | |
|     Defendants. | | |

GOVERNMENT'S SECOND MOTION AND MEMORANDUM FOR
EXCLUSION OF TIME UNDER THE SPEEDY TRIAL ACT

    The United States, by its counsel, the United States Attorney for the District of Columbia, pursuant to 18 U.S.C. § 3161(h)(7) of the Speedy Trial Act, respectfully moves for an Order excluding a period of 180 days from the calculation of the time within which this case must be tried. This motion for exclusion is made because of the size and overall complexity of this case.

I. Factual Background

On October 25, 2005, a federal grand jury returned an indictment charging nine defendants with participating in a narcotics-trafficking organization operating in the greater Washington, D.C. area. This indictment was the result of a long-term investigation into drug trafficking being conducted by the joint FBI/MPD Safe Streets Task Force, who in 2004, obtained information that a large narcotics distribution organization was operating in the greater Metropolitan Washington, D.C., area and elsewhere. On November 23, 2005, this Court granted the government's initial Motion for Exclusion of Time Under the Speedy Trial Act, culling out 180 days from the time of indictment to trial, based on the complex nature of the case. On March 16, 2006, the grand jury issued a superseding indictment charging this group, along with additional defendants Kirk Carter and Lawrence Maynard, with narcotics conspiracy and additional substantive charges. These indictments were based on information obtained from confidential sources and corroborated by physical surveillance, analysis of telephone records and pen registers, and other investigative techniques, and ultimately a Title III wire intercept and follow-up search warrants which yielded 100 kilograms of cocaine and in excess of $900,000 from nine locations in the State of Maryland and the District of Columbia. At a March 17, 2006, status hearing and arraignment on the new charges, the Court again indicated its willingness to cull additional time from the Speedy Trial Act, due to the complex nature of the case, and suggested that the government file such a motion and order with the Court.[1]

---

[1] The government appreciates that the Court made such a suggestion nearly three months ago, and that this motion and order should have been filed sooner, and apologizes for any inconvenience this may have caused the Court and counsel for the defense. However, the government notes that there were at least two outstanding motions filed by Antoine Jones, pertaining to law library access and his conditions of confinement, on which the Court did not

As noted in the initial Motion for Exclusion of Time Under the Speedy Trial Act – which is incorporated by reference herein – the lead defendant in the indictment, Antoine Jones was the sole proprietor of a nightclub named "Levels," which is located at 1960 Montana Avenue, N.E., Washington, D.C., which he used both as a legitimate business, and as a location where he could conduct his drug trafficking activities, as well as launder drug trafficking proceeds.  Based on the 6,000, wire interceptions, several of Jones's kilogram-quantity customers were identified, among them Kirk Carter, Kevin Holland, and Adrian Jackson.  And based on the search warrant of the stash location, from which approximately 100 kilograms of cocaine and $800,000, were recovered in a search warrant executed on October 24, 2005, defendants Roel Bermea, Jr., Alberto Rolando Carrillo-Montelongo, and Ricardo Sanchez-Gonzalez were identified as members of the Mexican supply chain which was providing large quantities of cocaine to Jones and his local network.

On October 25, 2005, the day following the search warrants in this case, a grand jury handed down the initial drug conspiracy indictment.  In the ensuing months, the investigation continued, including the discovery of a parallel investigation into Jones and his Mexican suppliers being conducted by the Baltimore field office of the Bureau of Immigration and Customs Enforcement (ICE).  That ICE investigation, which dated back to 2004, demonstrated additional links between Jones and various members of the Mexican supply chain.  As the final trial picture emerges, the government anticipates returning one final superseding indictment which will focus the indictment on those overt acts and substantive offenses which pertain to the

---

rule until April 24, 2006, which thus becomes the operable date for the running of the Speedy Trial Act.

remaining defendants.[2]

To comply with its discovery obligations, the government has been producing all of the evidence mentioned above to the defense, including the wire interceptions in their entirety and the synopsis of each of the calls, drafted by the agents who monitored the wire. The government anticipates that sometime in August, 2006, the government will be in a position to produce to the defendants verbatim transcripts of those calls the government intends to use at trial, a comprehensive list of which was provided to the defense on June 5, 2006. Further, the government has produced thousands of hours of videotaped surveillance, both of the stash house, and of Levels, along with additional hours of videotaped surveillance from the Maryland ICE investigation. The government notes that it has attempted to identify those portions of the videotapes it intends to use at trial and is continuing to make those decisions and pass that information along to the defendants as those decisions are made. Finally, the government has produced evidence seized from the various search locations Once this production has taken place, each of the defendants will need time to examine and digest the discovery materials. The sheer volume of evidence in the case will prolong the discovery process and necessitate – for both the government and the defense – a lengthy period of time for pretrial preparation.

---

[2]     The government notes that, upon a superceding indictment, the Speedy Trial clock will begin anew.

II. Argument

> The overall complexity of this case, including the large number of defendants, voluminous discovery material, including in excess of 6,000 wire interceptions, justifies an additional 180-day exclusion from the statutory period in which this case must be tried under the Speedy Trial Act.

Now that all defendants have been arraigned on the current indictment, all the outstanding motions have been decided, and the speedy trial clock has begun to run, this Court should exclude a period of 180 days from the Speedy Trial calculation because of the overall size, complexity, and seriousness of this case. The number of defendants, and the nature of the evidence supporting the charges in the indictment, including well in excess of 6,000, intercepted telephone calls, many hours of videotaped surveillance, and voluminous documents resulting from the Maryland ICE investigation, make this case particularly complex and justify an additional exclusion of time under 18 U.S.C. § 3161(h)(8)(A). The Speedy Trial Act provides that such an exclusion may be ordered by the Court either on its own motion or at the request of one of the parties in the interests of the "ends of justice." An "ends of justice" exclusion must be supported by appropriate findings. Id.

Section 3161(h)(8)(A) allows the court to exclude a period of delay from the Speedy Trial Act calculation if the Court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Section 3161(h)(8)(B) sets forth the factors the court may consider when determining whether to exclude time pursuant to Section 3161(h)(8)(A). Where the court finds that the case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for

5

the trial itself within the time limits established" the court may exclude such time as necessary to serve the ends of justice.  18 U.S.C. §§3161(h)(8)(A) and 3161(h)(B)(ii)(iv).  The Court has broad discretion to grant an exclusion of time when, in its view, the case's complexity requires that counsel have additional time to prepare in order to ensure a fair trial.  See United States v. Rojas-Contreras, 474 U.S. 231, 236 (1985).

      Applying the factors set forth in Section 3161(h)(8)(B), courts have routinely excluded reasonable periods of time in cases similar in scale and complexity to the instant case.  The presence of multiple defendants in a charged conspiracy case has been frequently cited as the basis for exclusion of time. See United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995) (upholding trial court's exclusion of time under the Section 3161(h)(8)(A) in "a case with six defendants, eight attorneys, a thirty-three count indictment, and the possibility of prosecution under a seldom-used federal death penalty statute"); United States v. Butz, 982 F.2d 1378, 1381 (9th Cir. 1993) (upholding trial judge's exclusion of time under Section 3161 (h)(8)(A) because case charging nine co-defendant conspiracy in a twenty-nine count indictment was sufficiently "complex"); United States v. Ditommaso, 817 F.2d 201, 210 (2d Cir. 1987) ("we agree that this multi-defendant, international drug smuggling and money-laundering case was sufficiently complex to warrant excludable time"); United States v. Fogarty, 692 F.2d 542, 546 (8th Cir. 1982) ("the complexity of the case, involving seven co-defendants and multiple overt acts occurring in seven states, outweighed the interests of the individual defendants" and justified exclusion of time under § 3161(h)(8)(A)); United States v. Ambrosio, 898 F. Supp. 177, 192 (S.D.N.Y. 1995) (ends of justice exclusion justified by complexity of case, where indictment charged seventeen defendants with large-scale drug conspiracy).

Courts also look to the nature of the evidence in an assertedly "complex" case in adjudicating requests to apply the "interest of justice" provision of the Speedy Trial Act. Findings of complexity and resulting exclusions of time have been based on the presence of a large amount of evidence gathered by means of court-authorized wiretaps. Production and review of wiretap evidence often takes a substantial amount of time, justifying the exclusion of such time from the Speedy Trial Act calculation. See United States v. Gambino, 59 F.3d 353, 358 (2d Cir. 1995) (trial court excluded time under § 3161(h)(8)(A) because case involved "hundreds of hours of video and audio tape recordings tracking the structure of the criminal activities of the Gambino organization"); Butz, 982 F.2d at 1381 (exclusion of time justified in part because evidence of charged drug conspiracy was in form of "hundreds of hours" of conversations intercepted pursuant to a Title III wiretap); Ditommaso, 817 F.2d at 210 (case involving "hundreds of reels of [audio] tapes" found sufficiently complex to justify exclusion of time under § 3161 (h)(8)(A)). Courts have also recognized that the necessity of gathering and producing a large amount of documents increases the complexity of a case and can alternately justify exclusion of time under the Speedy Trial Act. See United States v. Beech Nut Nutrition Corporation, 871 F.2d 1181, 1197-1198 (2d Cir.) (case in which government made available to defendants approximately 30,000 documents was "complex within the meaning of the Speedy Trial Act"), cert. denied, 493 U.S. 933 (1989).

As noted in our initial Motion for Exclusion of Time Under the Speedy Trial Act, the instant case is at least as "complex" as those described above in which courts have excluded time under Section 3161 (h)(8)(A). This indictment charges nine defendants with a drug conspiracy that distributed and possessed with the intent to distribute well in excess of 100 kilograms of

7

cocaine over the course of a nearly two-year period, cocaine which came from Mexico, through Texas, and into the greater Washington, D.C., metro area. Without more, the sheer number of defendants and the nature of the evidence justifies the exclusion of time. In addition, the size and complexity of this case means that the government must produce – as it has already begun to do – thousands of pages of documents to each of the co-conspirators, together with hundreds of hours of digitally recorded telephone conversations, along with production of voluminous materials pertaining both to the execution of numerous search warrants and to the Maryland ICE investigation.

     As is evident, given the voluminous nature of the evidence on which the indictment is based, discovery in this case will be a sizeable, protracted, and time-consuming chore. All of that discovery material, moreover, will need to be reviewed by each defense attorney. That review already has begun to prompt specific requests for additional information, as well as motions to suppress, to sever, and to otherwise limit the quantum of evidence to be presented against these defendants. The sheer volume of evidence in this case serves to make it unusually large and complex and, applying the plain language of the speedy trial statute and the above-cited authority, warrants an Order granting the requested exclusion of time.

     Finally, the 180 day exclusion requested in this motion will serve both the United States and the defendants and insure that this significant, complicated case is thoroughly prepared for trial. The government needs extra time to provide discovery, and to prepare a vast amount of material for trial presentation, taking steps such as preparing transcripts of the pertinent intercepted conversations. Moreover, the additional time requested already has begun to facilitate dispositions short of trial. Debriefing defendants and negotiating dispositions of their

cases is extremely time-consuming. The United States anticipates, however, that the evolution of the debriefing process and the cooperation of those interested co-conspirators may reduce the number of defendants who will ultimately remain when this case approaches readiness for trial. Courts also look to the nature of the evidence in an assertedly "complex" case in adjudicating requests to apply the "interest of justice" provision of the Speedy Trial Act.

### III. Conclusion

For the foregoing reasons, the United States, by its counsel, the United States Attorney for the District of Columbia, pursuant to 18 U.S.C. § 3161(h)(7) of the Speedy Trial Act, respectfully moves for an Order excluding from the calculation of when this case must be tried that period of time between the initial appearances of the eight initially arrested defendants and that of Kevin Holland, the remaining defendant in this case. Pursuant to 18 U.S.C. §3161(h)(8)(A), and because of the size and overall complexity of this case, the United States also moves for an Order excluding, from the date of the initial appearance of defendant Holland, a period 180 days from the calculation of the time within which this case must be tried.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


By: _____
RACHEL CARLSON LIEBER
D.C. Bar No. 456-491
JOHN V. GEISE
Assistant United States Attorneys
555 4th Street, N.W., Room 4820
Washington, DC 20530
(202) 353-8055
Rachel.lieber@usdoj.gov